**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANDREA J. CAGLE,

                      Plaintiff,

vs.                                                    Case No. 3:10-cv-481-J-JRK

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

                      Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Andrea J. Cagle ("Plaintiff"), proceeding pro se, is appealing the Commissioner of the Social Security Administration's final decision reducing her disability insurance benefits based on the Windfall Elimination Provision ("WEP") of the Social Security Act. In the event an individual has a history of both employment that was taxed for Social Security disability benefits ("covered" employment) and employment that was not taxed for Social Security disability benefits ("noncovered" employment), the WEP requires that any disability insurance benefits to which an individual may be entitled under the Social Security Act be calculated using a special formula. 42 U.S.C. § 415(a)(7). The special calculation avoids a windfall that could occur if an individual receives both disability insurance benefits under the Social Security Act and some other pension benefits from noncovered employment. Because

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 14), filed September 28, 2010; Order of Reference (Doc. No. 15), entered October 1, 2010.

Plaintiff did not receive a proper hearing before an Administrative Law Judge ("ALJ") prior to the final decision reducing her benefits, the matter is due to be reversed and remanded for Plaintiff to receive such a hearing and for the Social Security Administration to gather all relevant facts regarding the issue.

## II.  Background/Facts

Plaintiff worked for the federal government as an accountant, a noncovered position, for thirteen years, until 1989 when she was determined to be "disabled from civil service." Transcript of Administrative Proceedings (Doc. No. 12; "Tr.") at 154, 155. Plaintiff's disability was apparently based on her suffering from bipolar disorder and affective disorders. Compl. (Doc. No. 1) at 19, 21. On July 8, 1989, Plaintiff began receiving a civil service disability annuity. Tr. at 95, 154. Thereafter, in 1993, Plaintiff returned to work as a school teacher, a covered position. Tr. at 155. As a result of Plaintiff's return to work, Plaintiff's disability annuity stopped effective June 30, 1993. Tr. at 95, 99. Plaintiff worked as a school teacher until 2004 or 2005. Tr. at 155.

Plaintiff applied for disability insurance benefits through the Social Security Administration in February 2006. Tr. at 7, 48, 166. When she applied, Plaintiff "reported that she was not entitled [to] nor [did she] expect to be entitled to a pension or annuity based in whole or in part on non-covered employment[.]" Tr. at 7; see also Tr. at 147. In October 2006, Plaintiff was determined to be disabled as of May 2, 2004. Tr. at 17, 166. Accordingly, Plaintiff was awarded disability insurance benefits as of February 2005.[2] Tr. at 17, 166.

---

[2]   Disability insurance benefits are payable up to twelve (12) months prior to the application date. 42 U.S.C. § 423(b).

Meanwhile, Plaintiff had been attempting to get her civil service disability annuity reinstated. Tr. at 154. After what Plaintiff describes as a "3 year fight," Tr. at 154, in October 2007, it was determined that Plaintiff was entitled to retroactive civil service disability payments effective January 1, 2005 through September 30, 2007. Tr. at 25. Plaintiff was issued a check in the amount of $26,254 constituting the retroactive payments to which she was entitled. Tr. at 54, 96. While not entirely clear from the record, it appears Plaintiff was determined to be eligible to receive payments of about $700 per month from October 2007 forward. Tr. at 25, 33, 48.

On November 27, 2007, Plaintiff reported to the Social Security Administration that her civil service disability annuity had been reinstated on October 12, 2007. Tr. at 25. On April 11, 2008, Plaintiff was notified by the Social Security Administration that from December 2006 through March 2008, Plaintiff had been overpaid in disability insurance benefits by $5,436. Tr. at 26. The Social Security Administration determined that an overpayment occurred because Plaintiff's disability insurance benefits should have been reduced in accordance with the WEP. See Tr. at 26, 47-49. Plaintiff was also notified that her benefits would be reduced from April 2008 forward, based upon the "pension" that she was receiving from the federal government. Tr. at 26-27.

On April 23, 2008, Plaintiff timely requested reconsideration of the Social Security Administration's determination. Tr. at 30-45. On July 28, 2008, Plaintiff was notified that her "claim ha[d] been reconsidered," but that upon reconsideration, the WEP applied not just from December 2006 as originally determined, but actually from February 2005 forward. Tr. at 47-49 (duplicate at 123-25). Apparently, the new date changed Plaintiff's "past due"

amount from $5,436 to $12,500. Tr. at 58, 81. Plaintiff was notified she "may request a hearing before an [ALJ] of the Office of Hearings and Appeals." Tr. at 47 (duplicate at 123). Enclosed with the reconsideration determination was a "leaflet" explaining in detail Plaintiff's right to a hearing before an ALJ, as well as other appeal rights. Tr. at 126-28.

In late September 2008, Plaintiff timely requested a hearing before an ALJ, and in so doing, submitted argument regarding the improper application of the WEP to her disability insurance benefits calculation, as well as numerous documents supporting her argument. Tr. at 51-112. Plaintiff was notified that her hearing would be held on May 19, 2009. Tr. at 113. Prior to the hearing, Plaintiff submitted additional letters and documents supporting her contention that the WEP does not apply to her case, Tr. at 114-28, 129-43, 144-52, 176-222, 223-28, as well as objections to the issues the ALJ planned to consider, Tr. at 153-75.

The ALJ convened a hearing on May 19, 2009. Tr. at 557-70. Plaintiff appeared pro se. Tr. at 559. The ALJ recognized that Plaintiff's case was "not the usual type of case" he reviewed, so he wanted to give Plaintiff "every benefit and make sure that it's researched." Tr. at 559. The ALJ planned to assign a "senior attorney" to "look into the issues in [Plaintiff's] case." Tr. at 559-60. According to the ALJ, the attorney would research the issues impartially, and in the end, "may come up and say, the department has no case at all, [Plaintiff] should get something or another." Tr. at 560.

Plaintiff notified the ALJ she had prepared a statement to read and she had some additional documentation to submit. Tr. at 560. The ALJ responded, "Okay. Well, I don't want to even get into that at this point." Tr. at 560. Plaintiff asked, "Oh, so you're not really going to really hear the case today in the normal fashion?" Tr. at 560. The ALJ responded

in part, "Didn't plan to because I don't have enough information." Tr. at 560. As such, the hearing did not go forward on the merits. Tr. at 560-68.

The ALJ encouraged Plaintiff to try and find an attorney to help her with her case. Tr. at 561-62. The ALJ also confirmed that the Social Security Administration had been deducting about $400 per month based upon the WEP from Plaintiff's normal payment of $1,000. Tr. at 562. Plaintiff further informed the ALJ that she was being charged about $12,000 in overpayment. Tr. at 564.

Later, the following exchange occurred:

Q   Now I can't promise results except we will be totally there and you'll be heard.
A   Well, so I will have another hearing?
Q   You'll get another notice of hearing. Or, again, I'm not promising this, there is some cases - -
A   They might be able to do it from all I've written, because I sure have written a lot.
Q   Yeah, sometimes that can be done.

Tr. at 567. In telling Plaintiff that the case may be decided on her written submissions, the ALJ was apparently referring to the scenario he had discussed earlier in which it could be determined that "the department has no case at all[.]" The ALJ permitted Plaintiff to submit her documentation and to explain to the ALJ a mistake that the Social Security Administration had made which was irrelevant to the issue at hand.[3] Tr. at 567-68. Thereafter, the hearing was closed. Tr. at 564.

Plaintiff did not receive another hearing. On September 2, 2009, the ALJ issued a written decision which was fully favorable to Plaintiff: the ALJ determined that Plaintiff's

---

[3]   The additional documentation Plaintiff submitted can be found at Tr. at 229-34.

disability insurance benefits were not subject to offset based upon the WEP. Tr. at 17-24. The ALJ did not provide his reasoning for doing so; instead, he referred to the plethora of arguments and documentation Plaintiff had provided:

> [Plaintiff] has raised a number of persuasive arguments which articulate why her disability benefit payments are not subject to reduction. The [ALJ] has accepted these arguments. The record establishes that [Plaintiff] is clearly disabled, and she is therefore eligible to be paid.

Tr. at 23 (citations omitted).

On September 4, 2009, the Operations Manager for the Mid-Atlantic Social Security Center in Philadelphia, Pennsylvania requested that the ALJ's decision be reviewed. Tr. at 235. On October 29, 2009, a notice was mailed to Plaintiff in which she was advised that the appeals council had decided to review the ALJ's decision. Tr. at 10-13 (duplicate at Tr. at 243-44B). Plaintiff was informed the appeals council "found that there is an error of law," and the council planned to issue a decision finding Plaintiff's disability insurance benefits were subject to the WEP as of February 2005. Tr. at 11 (duplicate at Tr. at 244). Plaintiff was permitted to submit additional evidence and a statement within thirty (30) days. Tr. at 11-12 (duplicate at Tr. at 243-44A). Additionally, Plaintiff was informed that she could request an appearance before the appeals council:

> You may ask for an appearance before the Appeals Council to tell us about your case. You must tell us in writing within 30 days from the date of this letter why you want an appearance.
> Under our rules, we will give you an appearance if:
> ● There is an important question of law or policy;
>    OR
> ● Oral argument would help us reach a proper decision.
> If we decide to give you an appearance, we will notify you about the time and place at least 10 days before the date scheduled for your appearance.

Tr. at 12 (duplicate at Tr. at 244A). An address and a facsimile number were provided. Tr. at 12 (duplicate at Tr. at 244A).

Plaintiff submitted additional argument and evidence, Tr. at 245-53, 288A-309, as well as a "Motion to Dismiss AC Review Action of [Plaintiff's] 9/2/09 Fully Favorable ALJ Decision," Tr. at 254-65, 266-79. In addition, on November 19, 2009, the appeals council received an inquiry from U.S. Congressman John Mica regarding Plaintiff's case, to which Plaintiff's detailed request for his assistance was attached. Tr. at 280-88. Further, although it does not appear in the transcript of administrative proceedings, Plaintiff provided to this Court a document entitled "Request for an Appearance" in which she requested an appearance before the appeals council. Plaintiff's Memorandum (Doc. No. 17; "Pl.'s Mem."), filed November 5, 2010, at 24.[4] Plaintiff provided a "fax call report" produced by the store from which she faxed the request, in which it is stated that the document was faxed on November 19, 2009 to the same number provided on the appeals council's October 29, 2009 notice. Id.

On March 31, 2010, the appeals council issued a decision reversing the decision of the ALJ and finding that Plaintiff's disability insurance benefits are subject to the WEP effective February 2005. Tr. at 6-8. In so doing, the appeals council made extremely limited factual findings. Tr. at 6-8. The appeals council relied solely on Plaintiff's receipt of a "disability pension based on her employment with the federal government that was not covered by Social Security." Tr. at 7-8 (citation omitted). According to the appeals council, Plaintiff's "Informational/Certified Earnings Records . . . indicate[] that [Plaintiff] is receiving

---

[4] Citations to Pl.'s Mem. are to page numbers assigned by the Court's Electronic Filing System.

a non-covered pension that she was first eligible to receive in July 1989 when she became disabled and is based on fifty months of work which were not covered by Social Security and were based on her employment that began July 10, 1976[.]" Tr. at 8 (citation omitted). The appeals council did not reference or rule upon Plaintiff's request for an appearance (likely because it does not appear in the transcript). From the appeals council's decision– which has become the Commissioner's final decision– Plaintiff now appeals.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).

### IV. Discussion

Although Plaintiff mainly focuses on arguing her legal position regarding why the WEP should not apply to her case, see generally Compl.; Pl.'s Mem.; Plaintiff's Reply Brief (Doc. No. 29; "Reply"), filed March 14, 2011, she also contends she did not receive a proper hearing regarding the matter, Compl. at 46-49; Pl's Mem. at 19. Plaintiff states in her Complaint (which is incorporated by reference into her memorandum) that "nothing at all was discussed about the particulars of the Plaintiff's case. So the Plaintiff had no due process of having a hearing to discuss and present evidence." Compl. at 48 (emphasis and capitalization omitted). Further, in her memorandum, Plaintiff states:

> . . . I made it very clear to the Appeals Council that I never had a real hearing on the issues of my complaint! . . . I truly wonder if the Defendant can explain what happened to my request for Oral Hearing.

Pl.'s Mem. at 19; see also Compl. at 54-55 (discussing request for hearing and stating it was not received by the appeals council). Defendant does not respond to Plaintiff's argument and allegations regarding the lack of a proper hearing before the ALJ and her unanswered request for argument before the appeals council. See generally Memorandum in Support of the Commissioner's Decision (Doc. No. 24), filed January 27, 2011. Instead, Defendant argues that substantial evidence supports the final decision to offset Plaintiff's disability insurance benefits in accordance with the WEP. See generally id.

Upon review of the transcript of the hearing, it is evident that the ALJ was not prepared to hold a proper hearing. In fact, he admitted as such. Tr. at 559-61. When Plaintiff attempted to be heard, she was denied the opportunity to do so, although she was permitted to submit written materials. See generally Tr. at 559-69. Given the circumstances, it cannot be said that Plaintiff received a proper hearing before an ALJ; the circumstances are tantamount to Plaintiff not receiving a hearing at all.

The Court has found only one case in which a plaintiff did not receive a hearing before an ALJ prior to a determination being made regarding whether the WEP should apply to offset the plaintiff's disability insurance benefits. See Petersen v. Astrue, No. 4:08CV3178, 2009 WL 484232, at *1 (D. Neb. Feb. 23, 2009) (unpublished), request for alteration or amendment of judgment denied, 2009 WL 995570, at *8 (D. Neb. Apr. 14, 2009) (unpublished), aff'd, 633 F.3d 633 (8th Cir. 2011). In Petersen, an ALJ deemed a hearing unnecessary, and issued a fully favorable decision which was later reversed by the appeals

council. 2009 WL 484232, at *1-3. "[T]here [was] no indication that [the plaintiff] requested an appearance before the Council or a hearing before an ALJ." Id. at *2. As such, the Petersen court did not discuss the impact of the failure to hold a hearing or to allow the plaintiff to appear in front of the appeals council. See generally id.

In every other case the Court has located regarding a decision to offset benefits based on the WEP, either the opposite is true (i.e., the plaintiff received a hearing), or it is not indicated whether the plaintiff received a hearing. See, e.g., Elshinnawy v. Comm'r of Soc. Sec. Admin., 244 F. App'x 459, 461-64 (3d Cir. 2007) (unpublished) (in a case involving the application of the WEP and whether the plaintiff was at fault in overpayment, the plaintiff received two hearings before an ALJ); Mash v. Comm'r of Soc. Sec. Admin., 209 F. App'x 972, 973 (11th Cir. 2006) (unpublished) (not indicating whether the plaintiff received a hearing before an ALJ); Fernandez v. Barnhart, 200 F. App'x 325, 326 (5th Cir. 2006) (unpublished) (not indicating whether the plaintiff received a hearing before an ALJ); Stroup v. Barnhart, 327 F.3d 1258, 1260 (11th Cir. 2003) (not indicating whether the plaintiff received a hearing before an ALJ); Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 654 (1st Cir. 2000) (plaintiff received a hearing before an ALJ); Rudykoff v. Apfel, 193 F.3d 579, 580 (2d Cir. 1999) (not indicating whether the plaintiff received a hearing before an ALJ but stating the plaintiff "challenged the reduction of benefits through a variety of administrative proceedings"); Holmes v. Comm'r of Soc. Sec., 124 F.3d 197 (table), 1997 WL 570398, at *1 (6th Cir. 1997) (unpublished) (the plaintiff received a hearing before an ALJ); Bowman v. Barnhart, 218 F. Supp. 2d 960, 962 (N.D. Ill. 2002) (the plaintiff received a hearing before an ALJ); Vanlerberghe v. Apfel, 82 F. Supp. 2d 1212, 1213 (D. Kan. 2000) (stating the

plaintiff "filed a timely request for hearing" but not stating whether one was received); Newton v. Shalala, 874 F. Supp. 296, 298 (D. Or. 1994) (the plaintiff received a hearing before an ALJ); Johnson v. Sullivan, 777 F. Supp. 741, 743 (W.D. Wis. 1991) (the plaintiff received a hearing before an ALJ). Additionally, both the United States Court of Appeals for the Ninth Circuit and for the Third Circuit have assumed without being asked to decide that due process requires a hearing prior to a decision to offset a claimant's benefits pursuant to the WEP. See Das v. Dep't of Health & Human Servs., 17 F.3d 1250, 1255 (9th Cir. 1994) (responding to the plaintiff's argument that his due process rights were violated, holding the plaintiff "has been given all the process that he is due" when he "was permitted one motion for reconsideration before the SSA, two hearings before ALJs, two requests for further review before the Appeals Council, and an appeal before the district court"); Fliegler v. Comm'r of Soc. Sec., 117 F. App'x 213, 216 (3d Cir. 2004) (unpublished) (concluding the plaintiff waived his right to confront adverse witnesses by declining to request a supplemental hearing at which he could cross-examine the witnesses, and therefore holding no due process violation occurred).

In light of the almost across-the-board granting of hearings to claimants faced with the potential reduction of their benefits pursuant to the WEP (in those cases in which it is indicated whether the plaintiff received a hearing), coupled with the Social Security Administration's election to do so in this case (but ultimate failure to follow through on having a meaningful hearing) and with the appeals council's apparent failure to receive and rule upon Plaintiff's request to be heard by the council, the undersigned has determined that this matter is due to be reversed and remanded. Plaintiff has suffered prejudice by not being

-11-

afforded the opportunity to be heard and by the record not being fully developed. For instance, Plaintiff adamantly declares, inter alia, that the annuity she receives from the federal government is not permanent; rather, it is temporary. In fact, in at least one document she submitted to the Social Security Administration, Plaintiff represents that the annuity will end when she reaches sixty years of age (which Plaintiff has now reached). Tr. at 33. However, in her Reply submitted to this Court, it appears Plaintiff may still be receiving the annuity payments. Reply at 5 (stating "from 2007 until 2011 Plaintiff has been receiving a 'reinstated disability annuity terminated due to restoration of earning capacity'"). It is unclear whether the Social Security Administration has determined whether the original representation is correct, and if so, whether it is material to the decision to apparently permanently reduce Plaintiff's disability insurance benefits based on her receipt of the annuity. On remand, Plaintiff shall be afforded the opportunity to be meaningfully heard on the issue of whether her disability insurance benefits should be subject to the WEP. In addition, the Social Security Administration shall ensure all relevant facts surrounding Plaintiff's receipt of an annuity are gathered prior to rendering a decision regarding whether the WEP should apply. The failure to do so and the failure to analyze such facts in a written decision regarding the application of the WEP has frustrated judicial review.

## V. Conclusion

For the reasons explained herein, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING AND REMANDING** the Commissioner's final decision with instructions to afford Plaintiff the opportunity to have a meaningful hearing on the issue of whether her disability insurance benefits should be subject to the Windfall Elimination Provision of the Social Security Act; to ensure all relevant facts surrounding Plaintiff's receipt of an annuity are gathered prior to rendering a decision regarding whether the WEP should apply; and to take such other action as may be necessary to resolve this claim properly.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 29, 2011.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record
*Pro Se* party